## THE MARMOR.

### MARMOR MARINE CO., Inc. v. THE ROBIN HOOD.

### No. 16142.

District Court, E. D. New York.

March 24, 1942.

Platow, Lyon & Stebbins, of New York City (John A. Lyon, of New York City, of counsel), for libellant.

Mahar & Mason, of New York City (Frank C. Mason, of New York City, of counsel), for claimant.

GALSTON, District Judge.

This libel arises out of the damage to the diesel tug Marmor, alleged to have been caused by negligence of the Robin Hood in crowding the former tug and tow while passing the Marmor.

The accident happened in the New York State Barge Canal. On November 8, 1940, the Marmor with four loaded barges in tow in tandem formation proceeded east-bound on the New York State Barge Canal, having left the terminal at Brewerton. The Robin Hood and her tow had also been tied up at the Brewerton tower with four barges in tandem formation. There is conflict of testimony between the pilot of the Marmor and the mate of the Robin Hood in respect to the respective times of departure from the Tower of the two boats. This discrepancy must be resolved in favor of the latter because he is supported by an impartial witness, the Tower man employed at Brewerton by the New York State Barge Canal. According to his sheet or log, the Robin Hood left the Tower at 2:35 A.M., the Marmor and its tow having left at 2:10 A.M. Moreover, the captain and the mate of the Marmor are in disagreement with each other as to how much time elapsed before the Robin Hood followed the Marmor from the Brewerton wall. The former fixed the time at from fifteen to twenty minutes, the latter at from eight to ten minutes. The time element is important as it bears not only on credibility but on the contention of overcrowding and the giving of passing signals.

The mates differ about the giving of signals, the pilot of the Marmor asserting that the Robin Hood came abreast without signal and crowded the Marmor to starboard, that the Marmor then blew a danger signal to which the Robin Hood paid no attention, and thereupon the Marmor hit the obstruction which caused the damage. On the other hand, the mate of the Robin Hood said he blew a regular passing signal, and received a two blast signal in reply. The Marmor then, according to the Robin Hood mate, followed with a three blast or checking down signal, to which the Robin Hood responded by slowing down. The Marmor stopped, at which time the mate on the Marmor requested the Robin Hood to double up the tows, a practice sometimes followed on the canal. This was declined by the Robin Hood.

Again bearing on the issue of credibility is the difference between the mate and the captain of the Marmor as to the point to which the Marmor proceeded after the accident; and both are contradicted in respect to the duration of the grounding by the Tower-man, whose testimony must be accepted as impartial.

There is testimony too on the part of the mate of the Robin Hood that as he followed the Marmor eastward, the lights of the Marmor and her tow were not in line. This perhaps arose from the fact that on two occasions the Marmor stopped because of some engine difficulty.

On the whole it would appear from the foregoing that the burden on the libellant to prove negligence on the part of the Robin Hood has not been sustained.

There was ample waterway for the two tows to pass without hindrance for the channel was from one hundred and seventy-five to two hundred feet in width.

I make the following findings of fact and conclusions of law:

1. That at all the times hereinafter mentioned the tug Marmor was owned by the libellant, Marmor Marine Co., Inc., and the tug Robin Hood was owned by the claimant, Conners Marine Co., Inc.

2. At about 2:10 A.M. on November 9, 1940, the tug Marmor left the port wall at Brewerton eastbound on Lake Oneida with a tow of four loaded barges.

3. After leaving the wall the Marmor proceeded too far to the starboard or right side of the channel and when she reached a point about 800 or 900 feet westerly of Buoy No. 139, she ran aground outside of the channel.

4. At about 2:34 A.M. on November 9, 1940, the tug Robin Hood left the north wall at Brewerton, eastbound on Lake Oneida with a tow of four loaded barges.

5. After the Robin Hood started ahead eastbound, her mate, in charge of her navigation, observed the lights on the tow of the Marmor ahead of him, which lights were not in alignment but were out of line with one another, indicating that the tow had stopped or that it was aground.

6. After the Robin Hood had started ahead from the wall and was approaching the stern of the Marmor's tow the Robin Hood blew a two whistle passing signal which was answered by the Marmor and thereafter the Marmor blew a check whistle which was answered by the Robin Hood, which slowed down.

7. When the Robin Hood was abreast of the Marmor she was a distance from the Marmor of about 90 to 100 feet and was proceeding in the channel.

8. The navigator of the Marmor called over to the mate of the Robin Hood and requested that he wait out on the Lake for the Marmor so that the tows could be doubled up to make better time and this request was declined.

9. The Marmor was not crowded ashore by the Robin Hood, which at all times was proceeding well to its own port side of the position of the Marmor at a safe distance and at safe speed.

10. The grounding of the Marmor was due to the fault of those in charge of her and without fault on the part of the Robin Hood or those in charge of her.

11. The libel will be dismissed with costs in favor of the claimant.